


O

# United States District Court
# Central District of California

| | |
|---|---|
| DEVON KING<br><br>Plaintiff,<br><br>v.<br><br>CITY OF FONTANA; CHRIS TUSANT; and DOES 1-10, inclusive,<br><br>Defendants. | Case № 5:20-cv-01071-ODW (SHKx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [20]** |

## I.    INTRODUCTION

Plaintiff Devon King brings this excessive force action against Defendants City of Fontana (the "City") and Sergeant Chris Tusant, based on allegations that Tusant used unreasonable deadly force when he shot King. (*See generally* Compl., ECF No. 1.)  King moves for partial summary judgment on four of his eight causes of action. (*See* Mot. Partial Summ. J. ("Mot." or "Motion") 1, ECF No. 20.)  As discussed below, genuine disputes of material fact preclude summary judgment and the Court **DENIES** King's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

On May 11, 2019, at approximately 11:00 p.m., Sergeant Chris Tusant and Officer Joshua Patty initiated a traffic stop on a red four-door sedan. (Pl. Statement Uncontroverted Facts ("PSUF") 1, ECF No. 20-1.) They did not report over the radio dispatch the reason for the traffic stop at the time. (PSUF 2.) They stopped the vehicle because it allegedly failed to stop behind the limit line while making a right-hand turn at a red light and because they had received information that other officers observed its occupants exchanging a firearm. (PSUF 1.)

Tusant was positioned on the passenger's side of the vehicle during the stop. (PSUF 8.) Patty approached the driver's side of the vehicle and directed its occupants to "keep your hands up." (PSUF 3.) King, the front seat passenger, put his hands up. (PSUF 3.) The other occupants of the vehicle also complied with Patty's commands. (PSUF 4–5.) Patty never saw weapons in the car. (PSUF 6.) Patty commanded the driver to step out of the vehicle, which he did, and Patty walked the driver towards the rear of the car. (PSUF 9–10.) After the driver exited, King climbed over the center console, exited the vehicle out the open driver's door, and ran away. (PSUF 12–13.)

Tusant did not see a gun on King as he ran away, but he believed that King possibly had a gun. (PSUF 14.) Tusant chased King on foot. (PSUF 16.) As he pursued King, Tusant verbally warned King to put his hands up and that King "was gonna get shot." (Decl. Hang D. Le Ex. B (Tusant's Body Worn Camera ("BWC") Video, ECF Nos. 20-2, 21).)

During the chase, King ran up a berm next to a sidewalk and fell or tumbled back down. (PSUF 18, 20.) Close to when and where King fell down the berm, Tusant also ended up on the ground. (PSUF 22.) Tusant believed that King tackled him, but King asserts he never collided with Tusant. (Defs. Statement Genuine Issues ("DSGI") & Additional Material Facts ("DAMF") 22, ECF No. 24-1; Decl. Devon King ("King Decl.") ¶ 12, ECF No. 20-8.) For a moment, the two were both

on the ground only feet apart, with King near Tusant's feet. (PSUF 22–23.) Until this time, Tusant believed it would be inappropriate to shoot at King because Tusant did not have reason to believe that King posed an immediate threat. (*See* PSUF 15, 17, 19.) However, Tusant observed a gun in King's right hand when King was on the berm. (PSUF 21.) King confirms he was holding a gun in his right hand as he ran up the berm, but dropped the gun when he fell. (King Decl. ¶¶ 11–12.)

King got up and ran away again. (PSUF 24.) The gun was on the ground near Tusant's feet. (PSUF 25.) Tusant testified he did not know this until later. (DSGI 25; Decl. Bruce D. Praet ("Praet Decl.") Ex. 6 ("Tusant Dep.") 49:23–25, ECF Nos. 24-5, 24-9.) Tusant fired four shots at King as King ran away. (PSUF 28–29.) When Tusant fired, he did not see a gun in King's hands or on his person. (PSUF 30.) Tusant claims King began to turn toward Tusant as King ran, but King asserts he never turned or looked over his shoulder as he ran from Tusant. (DSGI 32–33.) King sustained gunshot wounds to both of his legs. (PSUF 34.) After the shooting, King was "100 percent compliant." (PSUF 41.) Tusant approached and handcuffed King, at which time there was no gun in King's hands or near his body. (PSUF 42–43.) King pleaded guilty to possession of a firearm by a convicted felon, California Penal Code section 29800(A)(1), and felony resisting an officer, California Penal Code section 69 ("Section 69"). (DAMF 84.)

King then filed this civil suit against the City and Tusant. King asserts eight claims, the first five pursuant to 42 U.S.C. § 1983 and the remaining three under California law: (1) excessive force, (2) denial of medical care, (3)–(5) municipal liability, (6) battery, (7) negligence, and (8) violation of the Bane Act, California Civil Code section 52.1. (Compl. ¶¶ 27–95.) King moves for partial summary judgment on his excessive force, battery, negligence, and Bane Act claims.[2]

---

[2] King objects to certain of Defendants' evidence. (*See* Pl. Statement Genuine Disputes, ECF No. 25-1; Pl. Evid. Objs., ECF No. 25-2.) Where the objected evidence is unnecessary to the resolution of the summary judgment motion or supports facts not in dispute, the Court need not resolve those objections here. To the extent the Court relies on objected-to evidence without

### III.  LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu*, 198 F.3d at 1134.

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex*, 477 U.S. at 322–23; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods.*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat

---

discussion in this Order, those objections are **OVERRULED**. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1122 (E.D. Cal. 2006) (proceeding with only necessary rulings on evidentiary objections).

summary judgment, as is "uncorroborated and self-serving" testimony. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to the case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. The Court assumes the "material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

King moves for partial summary judgment on his claims for excessive force, battery, negligence, and violation of the Bane Act. (Mot. 1.) Defendants contend triable issues of material fact preclude summary judgment for King on these claims, and that King is barred from asserting Tusant's use of force was unreasonable, under *Heck v. Humphrey*, 512 U.S. 477 (1994). (Opp'n 6–8, ECF No. 24.)

### A. Excessive Force, 42 U.S.C. § 1983

Excessive use of force incident to a search or seizure is subject to the Fourth Amendment's objective reasonableness requirement. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Ninth Circuit analyzes excessive force by "considering the nature and quality of the alleged intrusion" and "the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an

immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1279–80 (9th Cir. 2001)). "[T]here are no per se rules in the Fourth Amendment excessive force context; rather, courts must still slosh their way through the factbound morass of 'reasonableness.'" *Id.* (alteration and internal quotation marks omitted) (quoting *Scott*, 550 U.S. at 383).

The reasonableness of the force used is "judged from the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396. An officer cannot simply claim that he "fear[ed] for his safety or the safety of others . . . there must be objective factors to justify such a concern." *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1163 (9th Cir. 2011). Notably, that the suspect was armed—or even reasonably believed to be armed—with a deadly weapon does not render an officer's response as per se reasonable under the Fourth Amendment. *See George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013).

In light of the above, excessive force claims usually present jury questions: "Where the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is 'a question of fact best resolved by a jury'; only in the absence of material disputes is it 'a pure question of law.'" *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (first quoting *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003); and then quoting *Scott*, 550 U.S. at 381 n.8). As such, "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Id.* at 1125 (citing *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir. 2002)).

King contends he is entitled to summary judgment on his excessive force claim because the uncontroverted evidence shows Tusant's use of deadly force was objectively unreasonable under the circumstances. (Mot. 9–14.) Specifically, King argues it was objectively unreasonable for Tusant to shoot King as King ran away the

second time, after King dropped the gun near Tusant and posed no present threat. (*Id.* at 10–13.)

### 1. Triable Issues

At least two triable issues of material fact preclude summary judgment on the excessive force claim. Specifically, the parties dispute facts material to the most significant of the *Graham* factors: whether King posed an immediate threat of harm to Tusant or others. *See Mattos*, 661 F.3d at 441; *see also Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc), *cert. denied*, 545 U.S. 1128 (2005) (finding whether plaintiff posed a threat to be the most important of the *Graham* factors).

First, the parties dispute whether Tusant should have realized King was unarmed when he got up to run away the second time. King contends he dropped the gun on the ground near Tusant's feet, and Tusant therefore should have known King was no longer armed and posed no immediate threat when he ran for the second time. (PSUF 22–26.) Tusant asserts that he saw a gun in King's right hand when King was on the berm; Tusant did not know the gun had fallen to the ground until later; and Tusant did not know that King was unarmed when King ran away for the second time. (DSGI 22–25.) Further, both parties point to Tusant's BWC Video as supporting their version of the events, but the video is not sufficiently clear so as to blatantly contradict either version. *See A.G., 1-4 v. City of Fresno*, 804 F. App'x 701, 702 (9th Cir. 2020) (citing *Scott*, 550 U.S. at 381) (finding the court may "view[] the facts in the light depicted by the video[]" to the extent that it "blatantly contradict[s]" one party's version of the incident). The video shows the gun on the ground near Tusant after King ran the second time, but it does not contradict Tusant's testimony that he was unaware that the gun had fallen until after the shooting.

Second, the parties dispute whether King turned towards Tusant as King ran away the second time. King asserts he was running with his back to Tusant and his arms in view, and never turned towards Tusant or looked over his shoulder.

(PSUF 32–33; Mot. 11.) Tusant contends that, as King was running away, King began to turn to his right, towards Tusant, and in so doing, reasonably posed an immediate threat of harm to Tusant. (DSGI 32–33; Opp'n 10.) *See also George*, 736 F.3d at 838 ("If the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat."). Here again, Tusant's BWC Video is not sufficiently clear so as to contradict either version of events. Although the video does not clearly show King ever turning or beginning to turn, the video is dark, shaking, and King cannot always be seen. Given that King is not always visible in the dark and shaky footage, the Court cannot conclude that the video blatantly contradicts either version of events.

Whether a reasonable officer in Tusant's position would have perceived King as posing an immediate threat under these circumstances is material to the reasonableness of Tusant's use of force. *See Mattos*, 661 F.3d at 441. Viewing these triable issues in the light most favorable to Tusant as the non-moving party—that King was armed and began to turn toward Tusant while running—a reasonable jury could conclude Tusant's use of force was not objectively unreasonable. Therefore, summary judgment on King's excessive force claim is inappropriate.

    *2. Heck Bar*

Defendants argue King is barred from claiming Tusant's use of force was excessive under *Heck*, 512 U.S. 477, because King pleaded guilty to felony resisting an officer under Section 69. (Opp'n 7–8.) Although the Court has already concluded that summary judgment on King's excessive force claim is not appropriate, and Defendants do not move for summary judgment on this claim, the Court nevertheless finds judicial economy is served by also addressing Defendants' *Heck* argument.

"Under *Heck*, a § 1983 claim must be dismissed if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence' . . . ." *Sanders v. City of Pittsburg*, 14 F.4th 968, 970 (9th Cir. 2021) (quoting *Heck*, 512 U.S. at 487). *Heck* bars a plaintiff's cause of action if the plaintiff's success

"would negate an element of the offense," or if the plaintiff alleges facts inconsistent with his conviction. *Id.* (first citing *Smith*, 394 F.3d at 695; and then citing *Beets v. Cnty. of Los Angeles*, 669 F.3d 1038, 1046 (9th Cir. 2012)).

King pleaded guilty to felony resisting an officer under Section 69, which prohibits knowingly resisting an officer in the performance of his or her duty by threat or "use of force or violence." Cal. Pen. Code § 69(a). The officer must "be acting lawfully in the performance of his duties at the time the offense against [the officer] was committed." *Sanford v. Motts*, 258 F.3d 1117, 1120 (9th Cir. 2001) (internal quotation marks omitted). "Consequently, an excessive force claim can[not] survive the *Heck* bar if it[ is] predicated on allegedly unlawful actions by the officer *at the same time* as the plaintiff's conduct that resulted in" the plaintiff's conviction. *Sanders*, 14 F.4th at 971. In contrast, an excessive force claim does not necessarily imply the invalidity of a criminal conviction "if the alleged excessive force occurred *before* or *after* the acts that form the basis of the violation." *Id.*

King's excessive force claim does not necessarily negate his guilty plea: the factual basis for the plea includes use of a handgun, which King no longer held at the time Tusant shot him. (*See* Praet Decl. Ex. 8 at 43:4–7 (criminal plea hearing transcript; Deputy District Attorney stipulating to factual basis in police reports); Suppl. Decl. Hang D. Le Ex. J at D-000004–5, ECF No. 25-6 (San Bernardino County Crime Report).) The undisputed facts establish that, although King had a gun when he initially ran from Tusant, King dropped the gun on the berm near Tusant's feet when King fell, and thus, King no longer had the gun when he ran the second time.[3] It was at this point that Tusant shot him. Because the conviction under Section 69 relies on King's use of a handgun, King is correct that "any point during which Sergeant Tusant *saw King with the gun* could form the factual basis for this conviction." (Reply ISO Mot. 4, ECF No. 25 (emphasis added).) *See Holloway v.*

---

[3] The parties dispute whether Tusant *knew* King no longer had the gun; they do not dispute that King was in fact unarmed when he ran the second time. (*See* PSGI 25.)

*Horn*, 701 F. App'x 608, 609 (9th Cir. 2017) (finding no contest plea to violation of Section 69 "not inconsistent with facts alleged" that officer unlawfully shot plaintiff after plaintiff threw gun away over a fence, because "the mere brandishing of a weapon in the open may be 'threatening' or 'violent'" under Section 69 (alterations omitted) (quoting Cal. Pen. Code § 69(a)). Accordingly, King's excessive force claim against Tusant does not "necessarily imply the invalidity of his criminal conviction," because Tusant's alleged use of excessive force occurred *after* the conduct for which King was convicted. *See Smith*, 394 F.3d at 696; *Holloway*, 701 F. App'x at 609–10.

Defendants cite *Sanders v. City of Pittsburg* to argue "*Heck* bars any excessive force claim based on a series of acts constituting any part of the factual basis for the underlying criminal conviction." (Opp'n 8.) Defendants misstate the Ninth Circuit's analysis. Although the court in *Sanders* found that it was impossible to separate the acts that led to the conviction *in that case*, it specifically stated that "*Heck* presents no bar to an excessive force claim when an officer's allegedly unlawful action *can be separated* from the lawful actions." *Sanders*, 14 F.4th at 972 (emphasis added). Here, "the alleged excessive force occurred . . . *after* the acts that form the basis" of King's Section 69 violation, i.e., a separable event, "even if part of one continuous transaction." *Id.* at 971. Therefore, unlike *Sanders*, it is possible here to "carve out" the shooting from the Section 69 conviction "without necessarily implying that the conviction was invalid." *Id.* at 972 (alteration and internal quotation marks omitted). Thus, *Heck* does not bar King's excessive force claim.

**B.     State Law Claims**

King also moves for partial summary judgment on his claims under California law for battery, negligence, and violation of the Bane Act.

*1.     Battery*

A battery claim arising out of excessive force by a peace officer is evaluated by way of traditional Fourth Amendment analysis under *Graham*. *See Munoz v. City of*

10

*Union City*, 120 Cal. App. 4th 1077, 1102 (2004), *modified on denial of reh'g* (Aug. 17, 2004), *disapproved of on other grounds by Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622 (2013). As indicated above, triable issues of material fact exist as to whether Tusant used unreasonable or excessive force against King. Accordingly, summary judgment on the battery claim is also inappropriate.

    2.    *Negligence*

"[P]eace officers have a duty to act reasonably when using deadly force," but the reasonableness of the officer's actions must be determined in light of the totality of the circumstances. *Hayes*, 57 Cal. 4th at 629. To prevail on a negligence claim, a plaintiff must show that the officer "acted unreasonably and that the unreasonable behaviour harmed" the plaintiff. *Ortega v. City of Oakland*, No. C07-02659 JCS, 2008 WL 4532550, at *14 (N.D. Cal. Oct. 8, 2008) (quoting *Price v. Cnty. of San Diego*, 990 F. Supp. 1230, 1245 (S.D. Cal. 1998)). Officers may be liable under California law "if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021) (emphasis omitted).

King contends Tusant acted negligently, and created the circumstances under which King suffered harm, because a reasonable officer acting according to training would have conducted a high-risk car stop using high-risk tactics for the safety of the officers, community, and people inside the vehicle, rather than the low-key approach Tusant and Patty used. (Mot. 18.) Along with the factual disputes discussed above regarding Tusant's use of force, the parties present conflicting evidence in the form of declarations by retained police practices experts regarding the reasonableness of the officers' pre-shooting decisions and tactical conduct. In particular, the parties' experts offer conflicting declaration testimony concerning the reasonableness of (1) the decision to conduct a low-key-approach traffic stop rather than a high-risk stop, and (2) Tusant's decision to engage in a foot pursuit of King. (*See* Decl. Jeffrey

Noble ¶¶ 11–14, 16, 18, ECF No. 20-9 (King's expert, opining that a reasonable officer under the circumstances "would have used high-risk car stop tactics" and should have known that foot pursuit was "inadvisable"); Decl. George T. Williams ¶¶ 3.A–D, ECF No. 24-2 (Defendants' expert, opining that Tusant utilized sound discretion and tactics in the traffic stop and Tusant's pursuit was "consistent with training and sound tactics").

Viewing these disputes in the light most favorable to Tusant, a reasonable jury could conclude Tusant did not act unreasonably and was not negligent when he conducted a low-key-approach traffic stop and pursued King on foot. Accordingly, triable issues of fact also preclude summary judgment on the negligence claim.

3. *Bane Act*

California Civil Code section 52.1 provides a claim "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 331 (1998). A Bane Act claim is premised on the violation of a federal constitutional right, and as such, a court must look to the elements of the constitutional claim when evaluating a Bane Act claim. *See Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1168 (N.D. Cal. 2009) ("The elements of a section 52.1 excessive force claim are essentially identical to those of a § 1983 excessive force claim."). As discussed above, triable issues of material fact exist regarding whether Defendants violated King's constitutional rights. Accordingly, summary judgment is not appropriate on the related Bane Act claim.

///
///
///
///
///
///

## V. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment is **DENIED**. (ECF No. 20.)

**IT IS SO ORDERED.**

April 5, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**