1
2
3
4
5
6
7

Bruce D. Praet, SBN 119430
FERGUSON, PRAET & SHERMAN
A Professional Corporation
1631 East 18th Street
Santa Ana, California 92705
(714) 953-5300 Telephone
(714) 953-1143 Facsimile
BPraet@aol.com

Attorneys for Defendants

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11

DEVON KING,

12                     Plaintiff,

13  v.

14  CITY OF FONTANA, CHRIS
    TUSANT, and DOES 1 through 10,
15  inclusive,

16                     Defendants.

17

18

NO. 5:20-cv-01071 ODW SHKx

**DEFENDANTS' MOTION IN LIMINE NO. 1 TO LIMIT USE OF VIDEO EVIDENCE**

[**Declaration of Bruce D. Praet and [Proposed] Order Filed Concurrently**]

**DATE: September 12, 2022**
**TIME: 2:30 p.m.**
**CTRM: 5D**

**TRIAL: October 4, 2022**

19

20  **TO: PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

21          PLEASE TAKE NOTICE that on September 12, 2022, at 2:30 p.m., or as

22  soon thereafter as counsel may be heard, Defendants will and hereby do move this

23  Court in *limine* for an order that all parties, the attorneys for all parties, and all

24  witnesses who may be called in this trial be instructed on the following matters:

25          1.  To limit Body Worn Camera (BWC) video evidence to presentation of

26  real time only without slow motion, screen shots or any other method or format

27  which would alter the original video.

28

1

1    The parties have met and conferred on this issue without agreement.

2    Any comment or the attempted introduction of the above evidence will be

3    improper and highly prejudicial to Defendants. Even if the Court sustained an

4    objection to the evidence at trial and instructed the jury to disregard it, the

5    evidence would be so prejudicial that Defendants could not receive a fair trial.

6    Accordingly, Defendants asks this Court for an order admonishing Plaintiff,

7    their counsel and witnesses not to attempt to introduce such evidence, in any form,

8    and not to suggest, comment directly or indirectly on, or refer to the evidence in

9    any way, before the jury without first obtaining the Court's permission. The Court

10   is further requested to direct Plaintiff's counsel to caution, warn and instruct

11   Plaintiff's witnesses not to make any reference to such evidence and to follow the

12   same order.

13   This motion is based on this Notice of Motion and Motion, the

14   accompanying Memorandum of Points and Authorities, all exhibits, all the

15   pleadings and papers on file herein, any evidence of which the Court takes judicial

16   notice of prior to or at the hearing of this matter, and on any oral or documentary

17   evidence that may be presented at the hearing of this motion.

18   DATED: August 24, 2022         FERGUSON, PRAET & SHERMAN
                                     A Professional Corporation
19

20                             By:   /s/ Bruce D. Praet
                                     Bruce D. Praet, Attorneys for
21                                   Defendants

22

23

24

25

26

27

28

1

## 1.   PREFATORY STATEMENT.

This non-fatal officer-involved shooting took place on the evening of May 11, 2019, when Plaintiff, carrying a loaded handgun, elected to run from Fontana police officers.  The ensuing foot chase by Sgt. Tusant lasted a little over thirty (30) seconds and was captured on his body worn camera (BWC).  The critical sequence of events preceding the shooting took less than five (5) seconds. However, due to lighting, distance and the movement of Sgt. Tusant as he ran, the quality of the video is not high quality.

A central question of fact for the jury to decide will be whether to believe Sgt. Tusant's testimony that Plaintiff began to turn toward him just prior to the shooting or to believe Plaintiff who denies any such movement.  As the Court recognized in denying Plaintiff's motion for summary judgment, "the video is not sufficiently clear so as to blatantly contradict either version". [ECF 32:7, L18-20] Thus far, each party has attempted to illustrate this point by utilizing very poor quality screen shots depicting blurred images at increments of 1/30th of a second.

Another issue for the jury to consider is whether or how Sgt. Tusant would not have seen Plaintiff's gun at the sergeant's feet at the time of the shooting. Once again, while this was not apparent to Sgt. Tusant under the stress of the rapidly evolving situation, it can be retroactively seen only upon close examination of the unique field of vision of the BWC video at slow motion or through screen shots in the calm of the courtroom.

Unfortunately, Sgt. Tusant did not have the luxury of viewing this incident in slow motion or by dissecting each micro-second into frozen screen shots.  As the Supreme Court made clear in *Graham v. Connor, 490 U.S. 386, 396 (1989),* the reasonableness of any officer's use of force must be analyzed under the totality of the circumstances presented to the officer at the time and "without the benefit of 20/20 hindsight".  Yet, as several circuits have recently held, it constitutes reversible error to permit a jury to view BWC video in slow motion, using screen

shots or in any manner or format other than the actual speed and conditions under which the involved officer experienced the incident at the time.

While the stress and environment of actual conditions confronting Sgt. Tusant obviously cannot be experienced by the jury, it would be unduly prejudicial to permit them to utilize the "20/20 hindsight" condemned by the Supreme Court by viewing the BWC video in any format other than its original form and speed.

## 2. **PERMITTING THE JURY TO VIEW BWC VIDEO IN OTHER THAN REAL TIME VIOLATES *GRAHAM.***

With the increased availability of BWC video from involved officers, courts must now consider the manner in which such evidence is fairly presented to the jury. In particular, the question of whether to permit parties and their experts to present BWC video through screen shots, in slow motion or other formats must now be confronted. Although not yet addressed by the Ninth Circuit, several other circuits have very recently addressed the issue head on.

Most recently, the Tenth Circuit found reversible error when the district court permitted the introduction of screen shots when evaluating the objective reasonableness of an officer's use of force. In *Cunningham v. Shelby Cnty., 994 F3d 761, 766 (10th Cir. 2021) cert denied 142 S.Ct. 711 (2021),* the Court held:

> "Specifically, we are troubled by the district court's use of 'screen shots' to analyze the dashcam videos. By relying on screen shots, a court would violate the teaching of Graham against judging the reasonableness of a particular use of force based upon 20/20 hindsight."

The Fifth Circuit recently reached the same conclusion of reversible error when the reasonableness of an officer's use of force was analyzed with the benefit of 20/20 hindsight and scrutinized frame by frame. *Tucker v. Shreveport, 998 F3d 165, 176 (5th Cir. 2021).* As did the Tenth Circuit, the Court in *Tucker* noted:

1   "Importantly, however, the legal reasonableness of a police

2   officer's use of force is not evaluated with the benefit of

3   hindsight.  Rather, our focus is on the officers' reasonable

4   perception of the events at issue, as they happened, without

5   the aid of hindsight, multiple viewing angles, slow motion,

6   or the ability to pause, rewind, and zoom."  Cf.  *Lopez v.*

7   *Sheriff of Cook Cnty., 993 F3d 981, 992 (7th Cir. 2021)* -

8   frame by frame viewing in comfort of courthouse is not

9   the proper perspective."

10   In the instant case, Defendants do not suggest that the jury should be

11   prohibited from viewing the BWC video evidence.  However, consistent with

12   *Graham* and the most recent holdings of three circuits addressing this new issue,

13   Defendants simply request that the jury's viewing of any BWC video be limited to

14   real time presentation whether during the presentation of evidence, argument by

15   counsel or even deliberation.  To permit otherwise would be highly prejudicial to

16   Defendants and in direct contradiction of the Supreme Court's mandate to avoid

17   the benefit of 20/20 hindsight.

18   **3.   CONCLUSION.**

19   In order to ensure a fair trial for all parties and to follow the prevailing law

20   on this issue, Defendants respectfully request that the Court issue a limine order

21   precluding the parties, their experts, witnesses and counsel from presenting any

22   BWC video in any format or method other than its original quality and in real

23   time.

24   DATED: August 24, 2022                    FERGUSON, PRAET & SHERMAN
                                               A Professional Corporation

25

26                                             By:   /s/ Bruce D. Praet
                                                     Bruce D. Praet, Attorneys for
27                                                   Defendants

28

# DECLARATION OF BRUCE D. PRAET

I, Bruce D. Praet, declare and say:

1.  That I am an attorney duly licensed to practice before this and all courts in the state of California and that I am lead counsel for Defendants in this matter. Except where expressly stated to the contrary, I make this declaration from personal knowledge and, if called as a witness, I would testify in conformity herewith.

2.  On May 16, 2022, I met and conferred with Plaintiff's counsel regarding Defendants' proposal to limit the display of BWC video solely to real time without the use of slow motion, screen shots or any other method of display.  Counsel for Plaintiff would not agree to these terms.

3.  The incident giving rise to this lawsuit was captured in part on somewhat poor quality BWC video at an approximate speed of thirty (30) frames per second. Throughout discovery and expert depositions, the parties have reviewed the BWC videos in a variety of methods including slow motion and with the benefit of screen shots depicting 1/30th of a second.  However, due to poor lighting, poor quality, distances and the movement of the camera, critical actions and evidence cannot be accurately depicted.

4.  As more fully set forth in Defendants' moving papers, the Supreme Court and several recent circuit courts have made it clear that it would be improper and reversible error to permit the jury to view BWC video with the benefit of 20/20 hindsight or in any manner other than the perspective of the involved officer at the time.  Although the jury obviously cannot experience the same stress and conditions as those confronting Sgt. Tusant at the time, it would be unduly prejudicial to permit the jury to dissect his split-second decisions under tense and rapidly evolving circumstances into individual screen shots, in slow motion or in any other format other than real time.

///

1        5.  Only by limiting the jury's viewing of any BWC video to its original

2    quality, format and real time speed will the jury even remotely be able to properly

3    analyze the objective reasonableness of the actions of Sgt. Tusant without the

4    improper benefit of 20/20 hindsight.

5        I declare under the penalty of perjury that the foregoing is true and correct

6    and that this declaration was executed by me on August 24, 2022, at Santa Ana,

7    California

8                                      /s/   Bruce D. Praet
                                 Bruce D. Praet

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28